PER CURIAM.
Ray Edward Carter appeals an order revoking his probation for “using intoxicants to excess or possessing any drugs or narcotics.” At issue is whether the state put on competent evidence at the probation revocation hearing sufficient to prove that he used or possessed cocaine while on probation. We conclude the competent evidence was insufficient, and reverse.
On appeal, the standard of review is abuse of discretion, see State v. Carter, 835 So.2d 259, 262 (Fla.2002), which requires the reviewing court to evaluate the sufficiency of the evidence adduced at the probation revocation hearing. Hearsay is admissible at a probation revocation hearing to supplement or explain other, competent evidence, but hearsay *995 alone will not support revocation. See, e.g., Johnson v. State, 962 So.2d 394, 396-97 (Fla. 2d DCA 2007). Even without the testimony of laboratory analysts who performed the tests, laboratory test results are admissible in a violation of probation hearing, although only for limited purposes. Where, as in the present case, laboratory test results are hearsay, they cannot serve as the only basis for revocation.
Testimony in the present case that laboratory test results were positive for cocaine, like the laboratory report itself, was hearsay that came into evidence over Mr. Carter’s hearsay objection. “ ‘Although hearsay evidence is admissible in violation of probation hearings, a violation cannot be sustained solely on hearsay evidence.’ Andrews v. State, 693 So.2d 1138, 1141 (Fla. 1st DCA 1997).” Crume v. State, 703 So.2d 1216, 1217 (Fla. 5th DCA 1997).
At the end of the hearing in the present case, the trial judge found that the state had presented sufficient non-hearsay evidence based on Officer Guedez’s field or “presumptive office test” and revoked probation: Officer Guedez testified over objection that he performed a field test of Mr. Carter’s urine, and that it tested positive for cocaine. On cross-examination, Officer Guedez testified that he did not know the name of the field test he performed or how it worked scientifically; he only knew “if it comes back positive or if it comes back negative.” Officer Guedez testified that two years earlier he had performed another field test and obtained positive results which were not, in that instance, borne out by the lab results. He did not claim to' have administered the field test more than once before, and that administration apparently yielded a false positive. The trial judge overruled Mr. Carter’s timely objection to “any results of any in-house tests done by the officer, specifically to lack of foundation to the reliability of the test.”
Officer Guedez gave no indication that he was certified to administer the test, or had in fact administered it with any frequency. Cf. Terry v. State, 111 So.2d 1093, 1094 (Fla. 5th DCA 2001) (finding probation officer’s testimony sufficient to show presence of cocaine metabolites in Terry’s urine where officer, although untrained in pharmacology or chemistry, testified to the nature of the field test and how it was performed, and that he was certified by the state to administer the test, which he administered fifty times a month). Officer Guedez did not testify to any independent ability to identify cocaine or its metabolites in urine.
Mr. Carter argues that the state did not establish the field test was reliable or performed by anybody who could interpret it reliably, citing Weaver v. State, 543 So.2d 443 (Fla. 3d DCA 1989), where the only non-hearsay evidence the state used to prove a substance was heroin, at Weaver’s revocation of probation hearing, was the testimony of the agent who conducted a field test on the substance. The agent could not remember the name of the field test and did not know whether the test was reliable, and could not say, independently of the test, whether the substance was heroin. Id. at 443. The Third District found this evidence insufficient to establish that the substance involved was heroin, saying while “[p]roof of the identification of contraband does not require scientific tests ... it must be reliable and based on the observations of a witness with experience and training.” Id. at 444 (citing A.A. v. State, 461 So.2d 165, 166 (Fla. 3d DCA 1984)).
The present case resembles Weaver, a decision we recently cited with approval in Bray v. State, 75 So.3d 749 (Fla. 1st DCA *996 2011), in reversing revocation of Bray’s community control. Although Officer Gue-dez testified that the field test yielded positive results, he did not know the name of the field test or how the test worked, and he did not testify as to how often he administered the test. As far as can be told from the record, Officer Guedez performed the field test only twice — on the present occasion and on one other occasion, when his conclusion did not jibe with laboratory test results.
Officer Guedez did not demonstrate any expertise concerning or understanding of the workings of the test, and could not offer an opinion about the significance of the test results. See Robinson v. State, 982 So.2d 1260, 1261 (Fla. 1st DCA 2008) (reversing conviction for causing serious bodily injury while driving under the influence of alcohol when arresting officer offered lay opinion about horizontal gaze nystagmus (HGN) test results, explaining that “‘HGN test results should not be admitted as lay observations of intoxication because HGN testing constitutes scientific evidence [that must be excluded] unless the traditional predicates of scientific evidence are satisfied’” (quoting State v. Meador, 674 So.2d 826, 836 (Fla. 4th DCA 1996))).
The state had the burden to prove, by a preponderance of the evidence, that Mr. Carter had committed a willful and substantial violation of a condition of his probation. See Van Wagner v. State, 677 So.2d 314, 316 (Fla. 1st DCA 1996). “Hearsay is admissible in probation revocation proceedings, but cannot be the sole basis for revocation.” Hogan v. State, 583 So.2d 426, 427 (Fla. 1st DCA 1991) (citing Bass v. State, 473 So.2d 1367 (Fla. 1st DCA 1985)). Because the laboratory test results were hearsay, and Officer Guedez was not qualified to interpret the results of the field test, the state did not put on sufficient, competent evidence to prove that Mr. Carter used or possessed cocaine or any other drug or narcotic.
Reversed.
BENTON, C.J., CLARK, and MARSTILLER, JJ., concur.