NOT FINAL UNTIL TIME EXPIRES TO FILE REHEARING
MOTION AND, IF FILED, DETERMINED

IN THE DISTRICT COURT OF APPEAL

OF FLORIDA

SECOND DISTRICT

KYLE R. QUEIOR,                           )
                                          )
            Appellant,                    )
                                          )
v.                                        )      Case No:  2D13-3261
                                          )
STATE OF FLORIDA,                         )
                                          )
            Appellee.                     )
                                          )
_____ )

Opinion filed January 30, 2015.

Appeal from the Circuit Court for
Charlotte County; George C. Richards,
Judge.

Howard L. Dimmig, II, Public Defender,
and Richard J. Sanders, Assistant
Public Defender, Bartow, for Appellant.

Pamela Jo Bondi, Attorney General,
Tallahassee, and Brandon R. Christian,
Assistant Attorney General, Tampa,
for Appellee.


WALLACE, Judge.

          Kyle R. Queior appeals the circuit court's order revoking his probation and

the four concurrent prison terms imposed on him as a consequence.  Because the State

failed to present competent, nonhearsay evidence of Mr. Queior's use of a drug or

narcotic not prescribed by a physician, we reverse the order revoking probation and the resulting sentences.

## I.  THE FACTS AND PROCEDURAL BACKGROUND

Mr. Queior was serving the probationary portion of split sentences on four counts of second-degree arson when his probation officer filed an affidavit of violation of probation.  The Amended Affidavit of Violation filed on May 30, 2013, alleged that Mr. Queior violated conditions five and seven of his probation on January 7, 2013, by being "in possession of a drug or narcotic not prescribed by a physician, to-wit: <u>Opiates as shown by analysis of a urine sample obtained from the offender on 01/07/13, and confirmed by Alere Toxicology Services, Inc. on 01/19/13</u>." (Emphasis added.)

Condition five of Mr. Queior's probation order provided that "[y]ou will live without violating the law.  A conviction in a court of law shall not be necessary for such a violation to constitute a violation of your probation/community control."  Condition seven provided that "[y]ou will not use intoxicants to excess or possess any drugs or narcotics unless prescribed by a physician.  Nor will you visit places where intoxicants, drugs or other dangerous substances are unlawfully sold, dispensed or used."

Gregory Miller, Mr. Queior's probation officer, was the only witness who testified at the revocation hearing.  Mr. Miller testified that he was knowledgeable about the procedures for selecting a probationer for testing, performing a field test for drugs and narcotics, and interpreting the field test results.  He explained how to use the "Drug Check Dip Drug Test," which he had used to perform the field test on Mr. Queior's urine. The probationer provides a urine sample; then, a "drug strip" is inserted into the sample. "The urine travels up the drug strip and gives a result in the results window."

Next to the window [are] two letters, a capital C and a capital T. The C stands for control line, the T stands for test line. . . . First the control line has to have a red line, indicating that the test is working properly. And then the test line—if a red line appears it's negative, if a red line does not appear the person is presumptively positive for that particular test.

In this case, Mr. Miller used a "dip six test strip" which tested Mr. Queior's sample for six substances; he also employed "a one panel oxy stick." Mr. Miller stated that he performed an average of forty to fifty of the tests per month. In addition, he testified that he had been certified by the State to perform drug testing. The prosecution also introduced into evidence the certificates that Mr. Miller received upon his completion of online training in performing the Drug Check Dip Drug Test.[1]

Mr. Miller performed a field test on Mr. Queior's sample on January 7, 2013. Before Mr. Miller testified about the test results, defense counsel objected on the ground that the State had not laid the proper predicate to establish the reliability of the Drug Check presumptive test, a scientific analysis. The State argued that Mr. Miller had testified that he used the test forty or fifty times a month for twenty-four years, understood how to read the test results, and knew the name of the specific test used. The trial court overruled the objection.

Mr. Miller testified that the field test of Mr. Queior's sample was "positive for opiates and oxy[codone]." The State introduced into evidence the printout of the field test results that had been entered into the probation office's computer over defense counsel's objection to the printout's "being used instead of the actual drug test from the

---

[1]The certificates are in our record. Upon a review of the certificates, we find no indication that the State of Florida played any role in either the training or the issuance of the certificates.

lab[oratory]."  The trial court also overruled defense counsel's hearsay objection to the introduction of the printout.

Because Mr. Queior denied using drugs when confronted with the field test results, Mr. Miller sent Mr. Queior's sample for testing at an outside laboratory, Alere Toxicology Services, Inc.  The State introduced the form used to request the independent laboratory test into evidence over defense counsel's hearsay objection. Also, over defense counsel's objections based upon hearsay and the lack of predicate to establish the reliability of the testing, the State introduced the laboratory report from Alere Toxicology, which had been faxed to Mr. Miller.

Mr. Miller testified that the laboratory report reflected that Mr. Queior's sample was negative for oxycodone, but was positive for hydromorphone.  Mr. Miller also explained that hydromorphone is an opiate.  Thus the laboratory test verified the field test to the extent it established that Mr. Queior's sample contained an indicator of opiate use.  Mr. Miller acknowledged that the laboratory test was inconsistent with the field test to the extent that the field test was positive for oxycodone and the laboratory test was negative for oxycodone.

On cross-examination, Mr. Miller explained that there was a chemical on the Drug Check test strip that would react with the urine sample to yield a positive or negative result but he could not identify the chemical or otherwise explain scientifically how the test worked.  Mr. Miller also admitted that he was not able to interpret the laboratory report from Alere Toxicology other than his understanding that it reflected a positive or a negative result for a substance.  He was not familiar with how Alere Toxicology conducted the testing or how it recorded the results.  Mr. Miller also

- 4 -

acknowledged that on a prior occasion, he had a field test that was positive for a substance and a corresponding laboratory test that was negative for the same substance. However, Mr. Miller understood that the laboratory test was "absolute." By using the term "absolute," Mr. Miller apparently meant that the laboratory test was deemed to be more reliable than the field test.

Finally, over defense counsel's hearsay objection, Mr. Miller testified that he had received a telephone call from an anonymous caller who had told him that he should perform a drug test on Mr. Queior. According to the anonymous caller, Mr. Queior "was buying illegal drugs off the street" and was "using illegal drugs." Other than the performance of the field test itself, Mr. Miller had not been able to corroborate the information provided by the anonymous caller. Mr. Miller conceded that it was possible that the caller's information was inaccurate and that the caller might be trying to "rat [Mr. Miller] out."

Defense counsel argued in closing that the State had failed to establish that Mr. Queior had violated his probation. Counsel acknowledged that hearsay is admissible in a probation hearing to supplement or explain competent evidence. But, he argued, the State had failed to introduce any competent, nonhearsay evidence of Mr. Queior's drug use. Mr. Miller could not establish the reliability of the field test that he performed. Thus, it was not competent evidence of Mr. Queior's drug use. In addition, the laboratory report from Alere Toxicology was hearsay, and Mr. Miller could not establish its reliability. Accordingly, defense counsel argued that the State had failed to establish that Mr. Queior had violated his probation by a preponderance of the evidence.

## II. THE CIRCUIT COURT'S RULING

At the conclusion of the hearing, the trial court found that Mr. Queior had willfully and substantially violated his probation because he "tested positive for drugs." The trial court noted that under Terry v. State, 777 So. 2d 1093 (Fla. 5th DCA 2001), the field test conducted by Mr. Miller was sufficient evidence of Mr. Queior's drug use. The trial court observed that in Terry, the probation officer stated that he conducted field tests fifty times a month, which is what Mr. Miller testified that he did, "[e]ven though he didn't understand how exactly—how it worked, so." Noting that Mr. Queior had prior violations, the trial court decided to revoke Mr. Queior's probation and to impose a prison term.

## III. THE STANDARD OF REVIEW

We review the trial court's decision to revoke a defendant's probation for abuse of discretion. However, the trial court may not exercise its discretion to revoke probation until the State establishes through competent, substantial evidence that the probationer has willfully and substantially violated his probation by a preponderance of the evidence. See Savage v. State, 120 So. 3d 619 (Fla. 2d DCA 2013) (discussing the stages and standards of review on appeal of an order revoking community control or probation).

"While hearsay evidence is admissible in a revocation proceeding, revocation may not be solely based on hearsay." Bray v. State, 75 So. 3d 749, 750 (Fla. 1st DCA 2011). "[H]earsay may be used in such proceedings to supplement or explain competent, non-hearsay evidence." Rothe v. State, 76 So. 3d 1010, 1011 (Fla. 1st DCA 2011) (emphasis added).

## IV.  FRAMING THE ISSUE

At the revocation hearing, the State introduced three types of evidence to prove the alleged violations:  (1) Mr. Miller's account of the anonymous telephone caller's suggestion that he test Mr. Queior because, according to the caller, Mr. Queior was buying and using illegal drugs; (2) the report of the laboratory test performed by Alere Toxicology; and (3) Mr. Miller's testimony concerning his performance of and the results obtained from the field test administered in the probation office.  Obviously, the information provided by the anonymous telephone caller was hearsay; this evidence was clearly insufficient to prove the alleged violations.  The results of the laboratory tests performed by Alere Toxicology were also hearsay.  See Chavous v. State, 597 So. 2d 943, 944 (Fla. 2d DCA 1992); McDoughall v. State, 133 So. 3d 1097, 1099 (Fla. 4th DCA 2014); Isaac v. State, 971 So. 2d 908, 909 (Fla. 3d DCA 2007); Hogan v. State, 583 So. 2d 426, 427 (Fla. 1st DCA 1991).  It follows that the laboratory report was insufficient by itself to establish that Mr. Queior violated his probation by using hydromorphone.  See Robinson v. State, 842 So. 2d 892, 892-93 (Fla. 2d DCA 2003); see also Bray, 75 So. 3d at 750.  Therefore, the question that we are called upon to decide is whether Mr. Miller's testimony concerning his experience in performing the Drug Check Dip Drug test and in the interpretation of its results constituted competent, nonhearsay evidence sufficient to establish drug use by Mr. Queior.

## V.  DISCUSSION

Mr. Miller testified that there was a chemical on the Drug Check Dip Drug test strip that would react with Mr. Queior's urine sample to yield a positive or a negative result.  However, he was ignorant of the nature of the chemical and could not explain

the scientific basis for the field test.  Also, Mr. Miller acknowledged that on a prior occasion, he had performed a field test that reflected a positive result for a substance and received a laboratory test result for the same substance that was negative for the same substance.  Based on these and other undisputed facts in the record, we conclude that Mr. Miller's testimony about the field test results was not competent, nonhearsay evidence that Mr. Queior had used an opiate in violation of his probation. See Carter v. State, 82 So. 3d 993, 995 (Fla. 1st DCA 2011) (holding that a field test alone was not competent evidence of drug use when the officer performing the test did not know the name of the test or how it worked scientifically and he acknowledged that the test had been inaccurate on a prior occasion); Bray, 75 So. 3d at 750 (holding that two community control officers' testimony that they had conducted hundreds of urinalyses failed to establish their expertise regarding narcotics or drug testing and thus their testimony about the results of the field test they performed was hearsay); Weaver v. State, 543 So. 2d 443, 443-44 (Fla. 3d DCA 1989) (holding that an undercover officer's testimony that a substance was heroin was not competent evidence that the defendant violated his probation by selling them heroin when the officer "could not remember the name of the field test and stated that he did not know whether such a test [was] reliable"); see also Starling v. State, 110 So. 3d 542, 542-43 (Fla. 1st DCA 2013) (citing Carter and Weaver in support of its holding that the testimony of the defendant's probation officer about a positive field test on the defendant's urine sample was insufficient to sustain the revocation of probation based upon the defendant's alleged possession of cocaine).

Similarly, even absent the hearsay problem noted about the laboratory test report above, Mr. Miller's testimony was insufficient to establish that the laboratory test was competent evidence of Mr. Queior's drug use. Mr. Miller admitted that he was not able to interpret the laboratory report from Alere Toxicology other than his understanding that it was positive or negative for a substance. He was not familiar with how the laboratory test was performed or with the laboratory's method of recording the results of the test. Mr. Miller understood that the laboratory test was "absolute," which presumably meant that it was more reliable than the field test. But this understanding was not based upon personal knowledge. Accordingly, the laboratory test results—which were indisputably hearsay—did not constitute competent evidence of Mr. Queior's use of hydromorphone in violation of the conditions of his probation.

The trial court relied upon Terry, 777 So. 2d 1093, a case with similar facts, in support of its ruling that Mr. Miller's testimony was sufficient to establish that the field test was competent evidence of Mr. Queior's drug use. In Terry, the State charged Mr. Terry with violating his probation by using cocaine. Mr. Terry's probation officer testified, without objection, that he conducted a field test on Mr. Terry's urine sample, which indicated the presence of cocaine. The urine sample was also sent to a laboratory, but the test results were not admitted based upon Mr. Terry's hearsay objection. At the conclusion of the hearing, Mr. Terry argued that the probation officer's testimony about the field test was not competent, substantial evidence of his cocaine use. The trial court rejected this argument and revoked Mr. Terry's probation. 777 So. 2d at 1094.

The Fifth District concluded that the probation officer's testimony about the field test that he performed was sufficient to support a finding of a violation of probation. The Fifth District reasoned as follows:

> While the probation officer testified that he was not a chemist nor trained in pharmacology, and that he did not know what chemicals were used in the field test, he testified as to the nature of the field test and how it was performed. He further testified that he administers the test fifty times a month, and was certified by the State to administer the test. The trial court properly concluded that the testimony presented was sufficient to support a finding of violation of probation. See Gilberth v. State, 563 So. 2d 1120 (Fla. 4th DCA 1990).

Id. The Terry court also observed that the trial court should not have excluded the laboratory test results on hearsay grounds because hearsay is admissible in probation proceedings. Id.

We conclude that Terry incorrectly equates the probation officer's expertise in performing a field test with scientific testimony about how the test works to establish the test's reliability. Accordingly, to the extent Terry conflicts with Starling, Carter, Bray, and Weaver, we follow the latter cases and disagree with the holding in Terry.[2]

---

[2]We note that the Fifth District came to a different conclusion on the issue we decide here in a subsequent appeal brought by Mr. Terry. In Terry v. State, 846 So. 2d 1232, 1232-33 (Fla. 5th DCA 2003), a different panel of the Fifth District held that a probation officer's testimony concerning the performance and results of the field test of the sort approved in the earlier appearance of Mr. Terry before the court would "support a finding of probation violation as long as the testing is not the sole basis for the finding." (Emphasis added.) The qualification requiring some corroborating evidence in addition to the results of the field test in order to support a finding of a violation of probation does not appear in the Fifth District's earlier opinion. See Terry, 777 So. 2d at 1094.

## VI. CONCLUSION

For the foregoing reasons, we reverse the order revoking Mr. Queior's probation and his new sentences and we remand this case to the circuit court for further proceedings consistent with this opinion. We also certify that our decision is in direct conflict with the Fifth District's decision in <u>Terry</u>, 777 So. 2d 1093, regarding the sufficiency of a probation officer's testimony about the results of a field test to support a finding of violation of a condition of probation. We observe that our reversal of the order revoking Mr. Queior's probation on the ground that it was based solely on hearsay would not ordinarily preclude another revocation hearing after the filing of a new affidavit alleging the same violation. <u>See</u> <u>Chavous</u>, 597 So. 2d at 944 (citing <u>McCarrick v. State</u>, 553 So. 2d 1373 (Fla. 2d DCA 1989)). The State may again attempt to prove Mr. Queior's violations of conditions five and seven on January 7, 2013, so long as it files another affidavit of violation before Mr. Queior's probationary period expires.

Reversed and remanded for further proceedings; conflict certified.

NORTHCUTT and MORRIS, JJ., Concur.