IN THE DISTRICT COURT OF APPEAL
FIRST DISTRICT, STATE OF FLORIDA

JOEY DAWSON,

     Appellant,

v.

STATE OF FLORIDA,

     Appellee.

_____/

CASE NOS. 1D14-4630/1D14-4631

**CORRECTED PAGES: pg 10**
**CORRECTION IS UNDERLINED IN RED**
**MAILED: October 21, 2015**
**BY: NMS**

Opinion filed October 12, 2015.

An appeal from the Circuit Court for Leon County.
Kevin J. Carroll, Judge.

Nancy A. Daniels, Public Defender, and Joel Arnold, Assistant Public Defender, Tallahassee, for Appellant.

Pamela Jo Bondi, Attorney General, and Julian E. Markham, Assistant Attorney General, Tallahassee, for Appellee.

WOLF, J.

We deny the State's motion for rehearing, reconsideration, and certification of conflict, but we grant the State's request for a certified question of great public importance, withdraw our previous opinion, and substitute this opinion in its place.

We consolidate these cases for purposes of this opinion. Appellant pled nolo contendere to criminal charges in both cases, and the circuit court imposed

concurrent sentences of probation. Appellant challenges orders revoking his probation in both cases based on the court's finding that appellant violated the terms of his probation by testing positive for cocaine. Appellant argues the orders must be reversed because the State's evidence was entirely hearsay. We agree.

The only evidence presented by the State to prove appellant's violation was his probation officer's testimony that she conducted a urinalysis at her office that indicated appellant used cocaine, and then she sent a urine sample to a laboratory which issued a report indicating the urine tested positive for cocaine. Case law is clear that laboratory test reports are hearsay. See Hogan v. State, 583 So. 2d 426 (Fla. 1st DCA 1991). We find the probation officer's testimony regarding her lack of expertise in conducting the test she performed in her office to be indistinguishable from the officer's testimony in Bray v. State, 75 So. 3d 749 (Fla. 1st DCA 2011), and thus her testimony was also hearsay. Because the State's evidence consisted entirely of hearsay evidence, the orders revoking appellant's probation must be reversed.

In its motion for rehearing, the State argues this court should grant rehearing because (1) the issue should not be characterized as one of hearsay, but instead as a question of whether the officer had sufficient experience for her testimony to constitute competent, substantial evidence; and (2) the officer had sufficient expertise. Alternatively, the State asks this court to certify conflict with a similar

case out of the Fifth District and certify a question of great public importance. We deny rehearing and certification of conflict, but we grant certification of a question of great public importance, for the following reasons.

(1) <u>Whether the Issue Should be Framed as One of Hearsay</u>

The State argues this court mischaracterized the issue here as whether the officer's lack of expertise would render her testimony hearsay. The State argues the officer's testimony regarding the results of the field tests cannot be considered hearsay because the field test is not an out-of-court statement. Instead, the State argues the issue should be framed as whether the officer had sufficient expertise in conducting the field test such that her testimony would provide competent, substantial evidence to support the trial court's finding of a violation of probation. The State concedes this court and others have framed this issue as a hearsay issue. <u>See</u> <u>Bray</u>, 75 So. 3d at 750 (finding "the testimony of the community control officers was hearsay" because "neither testified as to any expertise as to narcotics or drug testing"); <u>Rothe v. State</u>, 76 So. 3d 1010, 1011 (Fla. 1st DCA 2011) ("[T]he officer's testimony about the results of the drug test she performed . . . is hearsay for she admitted on cross-examination that she has no specialized training, expertise or certification in drug testing."). However, the State asks this court to "revisit" its prior opinions to "clarify" that this is not a hearsay issue.

We decline to do so for two reasons. First, the State failed to raise this argument in its answer brief, and thus, it is an inappropriate argument to raise on rehearing. See Blinn v. Fla. Dep't of Transp., 781 So. 2d 1103, 1110 (Fla. 1st DCA 2000) (denying a motion for rehearing based on "the long-established rule that . . . issues not raised in the briefs . . . cannot be raised for the first time on motion for rehearing"). Second, in order for this court to "revisit" the holdings in these cases, we would have to go en banc, which the State does not request. Thus, we continue to consider this issue as one of hearsay.

## (2) Officer's Expertise

The State asks this court to reconsider our finding that the officer did not have sufficient expertise in conducting the urinalysis. It argues the standard used by this court in Bray, 75 So. 3d at 750, and by the Fifth District in Terry v. State, 777 So. 2d 1093 (Fla. 5th DCA 2001), is that an officer needs only to have "some expertise" in conducting the urinalysis, which the officer demonstrated here. Alternatively, to the extent Bray conflicts with Terry, the State asks this court to certify conflict.[*]

---

[*] Counsel actually asks this court to certify conflict with Queior v. State, 157 So. 3d 370 (Fla. 2d DCA 2015), but in context, it appears that was a typo because counsel asserts that this court's opinion is consistent with Queior. Instead, it seems counsel meant to request conflict to be certified with Terry v. State, 777 So. 2d 1093 (Fla. 5th DCA 2001).

4

As will be discussed below, "some expertise" is not the standard set forth in Bray, and Terry is factually distinguishable from this case and Bray.

In Bray, this court found that two officers' testimony concerning a urinalysis they conducted in their office was hearsay because, "[w]hile both officers testified that they had conducted hundreds of urinalyses, neither testified as to any expertise as to narcotics or drug testing. . . . Had [they] demonstrated some expertise in the matter, their testimony may have possibly survived a hearsay challenge." 75 So. 3d at 750. Thus, Bray did not hold the standard was "some expertise," but instead indicated that the testimony "may have possibly survived a hearsay challenge" had the officer had at least "some expertise." Id. (emphasis added).

The Bray opinion did not go into detail as to what kind of expertise might be required, but more discussion on this issue was given in Carter v. State, 82 So. 3d 993, 995 (Fla. 1st DCA 2011). In Carter, this court found an officer lacked sufficient expertise after his testimony revealed that "he did not know the name of the field test he performed or how it worked scientifically; he only knew 'if it comes back positive or if it comes back negative.'" Id. He also testified he had little experience, conceding he had only performed the test once before, which resulted in a false positive. Id.

The Carter court noted the officer "gave no indication that he was certified to administer the test, or had in fact administered it with any frequency." Id. Carter

5

parenthetically compared Terry, 777 So. 2d 1093, in which the Fifth District found the testimony of an officer regarding a field test was sufficient because although he was untrained in pharmacology or chemistry, "he testified as to the nature of the field test and how it was performed. He further testified that he administers the test fifty times a month, and was certified by the State to administer the test." Terry, 777 So. 2d at 1094. Unlike in Terry, the Carter officer could not "testify to any independent ability to identify cocaine or its metabolites in urine." Carter, 82 So. 3d at 995.

The Carter court concluded the officer "did not demonstrate any expertise concerning or understanding of the workings of the test, and could not offer an opinion about the significance of the test results." Id. at 996. Thus, the court concluded the officer "was not qualified to interpret the results of the field test." Id. (emphasis added).

This court similarly distinguished Terry in Rothe, 76 So. 3d at 1011, which held an officer's testimony was hearsay because she admitted she "has no specialized training, expertise, or certification in drug testing." This court compared Terry, noting the Terry officer "possessed state certification to administer such tests." Id.

Here, the officer failed to demonstrate expertise as required by Bray and Carter. When asked if she had any "specialized training," she testified she had only

6

"basic training." When asked to explain how the test works, she likened it to a pregnancy test "in that you submit the test into the urine specimen. One line is indicative of a positive result, two lines is indicative of a negative result." She testified that she did not know the name of the company that made the test, and she did not know the test's actual process or how it worked scientifically. Instead, she stated, "[t]he training that I have is only on conducting the tests with the equipment that we have." Her testimony was very similar to that of the officer in Carter, who "did not know the name of the field test he performed or how it worked scientifically; he only knew 'if it comes back positive or if it comes back negative.'" 82 So. 3d at 995. As in Carter, the officer here "did not demonstrate any expertise concerning or understanding of the workings of the test, and could not offer an opinion about the significance of the test results." Id. at 996 (emphasis added). Thus, as in Carter, she "was not qualified to interpret the results of the field test." Id.

The State is correct that the officer here differs from the one in Carter in that she has more experience in administering the test. The Carter officer had performed the test only once before and received a false positive, whereas the officer here stated she had performed the test over 100 times. However, the officers in Bray, 75 So. 3d at 750, had also conducted hundreds of urinalyses, and this court held that experience was insufficient where the officer lacked expertise about the

7

test that he or she had been performing. For those reasons, we decline rehearing and continue to hold that the officer lacked sufficient expertise.

We also deny the State's request to certify conflict with Terry because Terry is factually distinguishable, and thus not in direct and express conflict with this opinion. As noted above, in Carter and Rothe, this court indicated Terry was factually distinguishable because the officer in Terry was certified, whereas the officers in those cases were not. Similarly here, the officer is not certified. No court has gone into detail discussing what is required to become certified or why that distinction is important. However, by definition, to "certify" means "to recognize as having met specific qualifications within a field." *Certify*, Merriam-Webster Dictionary (6th ed. 2004). Basic training like that received by the officer here indicates being taught but not necessarily being required to show proficiency or to meet specific qualifications. Because the officer here was not certified, this case is factually distinguishable from Terry, and we decline to certify conflict.

We note that the Second District followed this court's line of cases and certified conflict with Terry in Queior v. State, 157 So. 3d 370, 375 (Fla. 2d DCA 2015) review granted, No. SC15-367 (Fla. Apr. 14, 2015). Queior is factually similar to Terry because in both cases, the officer testified he was certified to conduct the field test and he conducted it frequently. However, the Queior court found the officer's testimony was not competent, non-hearsay evidence because he

8

was "ignorant of the nature of the chemical" that reacts on the testing strip and "could not explain the scientific basis for the field test." Id. at 374. Queior held that Terry "incorrectly equates the probation officer's expertise in performing a field test with scientific testimony about how the test works to establish the test's reliability." Id. at 375 (emphasis added). "Accordingly," the Queior court held that "to the extent *Terry* conflicts" with First District precedent, including Carter and Bray, "we follow the latter cases and disagree with the holding in *Terry*." Id. at 375 (emphasis added). Queior certified that its decision was in direct conflict with Terry. Id. The supreme court has accepted discretionary jurisdiction, and briefing in that case has been completed according to the supreme court's docket. See State v. Queior, No. SC15-367 (Fla. Apr. 14, 2015).

The Queior court also noted that the Fifth District reached a somewhat different conclusion in a later appeal brought by Terry. Without giving a factual background or discussion of its reasoning, the Fifth District held, "Test results are admissible if a state-certified probation officer testifies about the nature of the test, how it is performed, and the number of times a test is administered; furthermore, the results will support a finding of probation violation as long as the testing is not the sole basis for the finding." Terry v. State, 846 So. 2d 1232, 1233 (Fla. 5th DCA 2003) (emphasis added). That distinction was not made in the first Terry opinion.

9

Finally, we grant the State's request for a certified question of great public importance. Although the supreme court has accepted jurisdiction in Queior, it is unknown how the supreme court will ultimately dispose of this issue or whether the reasoning of the supreme court's ruling in Queior would affect the result of this case. This issue is one that is obviously recurring, and the State needs guidance on what it needs to prove in this type of case. Thus, we certify the following question as one of great public importance:

> WHETHER THE TESTIMONY OF AN OFFICER THAT A FIELD TEST URINALYSIS PRODUCED A POSITIVE RESULT, ALONG WITH CORROBORATING HEARSAY TESTIMONY IN THE FORM OF A LABORATORY REPORT, IS COMPETENT, SUBSTANTIAL, NON-HEARSAY EVIDENCE TO SUPPORT A TRIAL COURT'S FINDING THAT A DEFENDANT VIOLATED THE TERMS OF HIS PROBATION BY USING A CONTROLLED SUBSTANCE IF THE OFFICER HAS TRAINING AND EXPERIENCE IN CONDUCTING URINALYSES BUT HAS NO CERTIFICATION OR UNDERSTANDING OF HOW THE TEST WORKS SCIENTIFICALLY?

Rehearing DENIED, question CERTIFIED.

WETHERELL and BILBREY, JJ., CONCUR.