# Supreme Court of Florida

_____

No. SC15-367
_____

**STATE OF FLORIDA**,
Petitioner,

vs.

**KYLE R. QUEIOR**,
Respondent.

[April 21, 2016]

POLSTON, J.

In an appeal from a violation of probation (VOP) proceeding, the Second

District, in Queior v. State, 157 So. 3d 370 (Fla. 2d DCA 2015), certified direct

conflict with the Fifth District Court of Appeal's decision in Terry v. State, 777 So.

2d 1093 (Fla. 5th DCA 2001), regarding whether probation officer testimony that

the probationer failed a field drug test personally administered by the officer is

competent, nonhearsay evidence of a probation violation.[1]  For the reasons below,

we hold that it is and that, in Queior's case, this evidence together with the hearsay

_____

    1.  We have jurisdiction.  See art. V, § 3(b)(4), Fla. Const.

evidence, including a lab report confirming the presence of opiates in Queior's urine, is sufficient to establish that Queior violated the conditions of his probation. Accordingly, we quash the Second District's decision to the contrary in Queior.

**BACKGROUND**

The State sought to revoke Queior's probation based upon his alleged illegal drug use contrary to the conditions of his probation. In support of the alleged violation, the State presented evidence in the form of a lab report, which was hearsay because it was not admitted through a records custodian, confirming the presence of opiates (for which Queior did not have a prescription) in Queior's urine. The State also introduced, through Queior's probation officer, hearsay testimony that the officer received an anonymous telephone call informing him that Queior had been buying and using illegal drugs.

However, the State acknowledged that, even under the lesser burden of proof and relaxed evidentiary standards applicable in VOP proceedings, Florida law prevents the trial court from relying solely upon hearsay evidence to revoke probation.[2] Therefore, to corroborate this hearsay evidence, the State introduced

_____

2. As we have explained, in a VOP proceeding, "the State need only establish by [the] greater weight of the evidence that the violation of probation occurred," and "hearsay evidence is admissible . . . to prove a violation of probation," although "[t]he hearsay evidence must be supported by non-hearsay evidence." Russell v. State, 982 So. 2d 642, 646 (Fla. 2008).

- 2 -

the testimony of Queior's probation officer, who testified that Queior failed a field drug test that the officer personally administered on Queior's urine before sending it to the lab for testing. Queior objected to the probation officer's testimony regarding the result of the field drug test "on the ground that the State had not laid the proper predicate to establish the reliability of the [field drug] presumptive test, a scientific analysis." Queior, 157 So. 3d at 372. Relying on the Fifth District's decision in Terry accepting similar testimony by a probation officer as sufficient evidence of a probation violation, the trial court overruled Queior's objection and revoked his probation.

On appeal, the Second District held that the probation officer's "testimony about the field test results was not competent, nonhearsay evidence that Mr. Queior had used an opiate in violation of his probation" and reversed the trial court's revocation order because the only other evidence of the violation was hearsay. Queior, 157 So. 3d at 374. In so doing, the Second District certified direct conflict with the Fifth District's decision in Terry. Id. at 375-76.

**ANALYSIS**

The State argues that the probation officer's testimony that Queior failed the field drug test is competent, nonhearsay evidence properly used to corroborate the hearsay evidence presented at Queior's VOP proceeding, including the lab report confirming the presence of opiates in Queior's urine. The State further argues that,

taken together, this evidence is sufficient evidence that Queior violated the conditions of his probation.  We agree.[3]

As the Fifth District recently explained, field drug testing "is routine and ubiquitous, such that judges throughout the state (i.e., the fact-finders in VOP proceedings) are well-versed in the procedure."  Bell v. State, 179 So. 3d 349, 352 (Fla. 5th DCA 2015).  In fact, studies show that field drug testing is "highly reliable, even when the test is not administered by a trained laboratory analyst." Id.

For example, as the Fifth District explained in Bell, one study found that "the overall error rates were a low 2.5% when the [field drug] tests were administered by officers and an even lower 0.8% when administered by trained laboratory technicians."  Id. (citing Nat'l Highway Traffic Safety Administration.  Field Test of On-Site Drug Detection Devices, Final Report October 2000, http://www.nhtsa.gov/people/injury/research/pub/onsitedetection/Drug_index.htm).  Another report found "[l]ittle difference in the performance of [field drug tests]

_____

3. A trial court's decision to revoke probation is reviewed for abuse of discretion.  Russell, 982 So. 2d at 646.  While hearsay is admissible in a VOP proceeding, it must be supported by competent, nonhearsay evidence.  Id.  Whether evidence is competent, nonhearsay evidence is a legal question subject to de novo review.  See Thomas v. State, 125 So. 3d 928, 929 (Fla. 4th DCA 2013) (explaining that, while evidentiary rulings are reviewed for abuse of discretion, "whether testimony is hearsay is reviewed de novo").

between tests conducted by laboratory technicians and laymen who had been trained in the proper procedures for conducting and reading the tests." Id. at 353 (quoting 1 Drug Testing Law Tech. & Prac. § 5:5 "On-site Drug Testing," (quoting Substance Abuse & Mental Health Servs. Admin., "Proposed Revisions to the Mandatory Guidelines for Federal Workplace Drug Testing Programs," (April 13, 2004))). Further, as the Fifth District explained in Bell, the State of Florida's general practice is to prove violations of probation based upon illegal drug use by "confirm[ing] the result of the field test by sending the sample to a laboratory for independent testing (using an even more accurate and sophisticated technology)." Id. at 354.

Despite the prevalent use and documented reliability of field drug tests, our district courts are split on the issue of whether probation officer testimony of the results of a field drug test personally performed by the officer constitutes competent, nonhearsay evidence that may be used to corroborate a hearsay lab report confirming the probationer's drug use. Compare Queior, 157 So. 3d at 374-75 (holding this evidence is insufficient evidence of a probation violation), with Bell, 179 So. 3d at 358 (holding this evidence is sufficient evidence of a probation violation).

Further, the district courts that have rejected this testimony as competent evidence have done so for different reasons, with some concluding the testimony is

hearsay and with others taking issue with the officer's expertise. Compare Dawson v. State, 177 So. 3d 658, 659 (Fla. 1st DCA 2015) (concluding probation officer's testimony "that she conducted a urinalysis at her office that indicated appellant used cocaine, and then she sent a urine sample to a laboratory which issued a report indicating the urine tested positive for cocaine" was hearsay because the officer "lack[ed] expertise in conducting the test"), Rothe v. State, 76 So. 3d 1010, 1011 (Fla. 1st DCA 2011) ("[T]he officer's testimony about the results of the drug test she performed . . . is hearsay for she admitted on cross-examination that she has no specialized training, expertise or certification in drug testing."), and Bray v. State, 75 So. 3d 749, 750 (Fla. 1st DCA 2011) (finding "the testimony of the community control officers was hearsay" because "neither testified as to any expertise as to narcotics or drug testing"), with Carter v. State, 82 So. 3d 993, 996 (Fla. 1st DCA 2011) (holding the State failed to "put on sufficient, competent evidence to prove that [the probationer] used or possessed cocaine or any other drug or narcotic" because the probation officer "did not demonstrate any expertise concerning or understanding of the workings of the test, and could not offer an opinion about the significance of the test results"), and Weaver v. State, 543 So. 2d 443, 443-44 (Fla. 3d DCA 1989) (holding probation officer's testimony regarding the results of a field test the officer conducted was not hearsay but was nevertheless insufficient, standing alone, to support a finding of a probation

violation where the officer "could not remember the name of the field test[,] did not know whether such a test is reliable[, and] could not say, independent of the test, whether the substance he tested was heroin").

In Queior's case, it is not entirely clear whether the Second District held that the probation officer's testimony was incompetent evidence because the court concluded the testimony was hearsay or because the court concluded that the officer was not qualified to opine on the scientific workings of the test or its reliability, or all of these things. Compare Queior, 157 So. 3d at 371 ("Because the State failed to present competent, nonhearsay evidence of Mr. Queior's use of a drug or narcotic not prescribed by a physician, we reverse the order revoking probation and the resulting sentences.") (emphasis added), with id. at 375 (concluding that the certified conflict case, Terry, "incorrectly equates the probation officer's expertise in performing a field test with scientific testimony about how the test works to establish the test's reliability"). It is also not clear to what extent the Second District's observation in Queior that there was "no indication that the State of Florida played any role in either the training or the issuance of the [probation officer's] certificates" relating to the field drug test impacted its holding that the State failed to produce sufficient evidence that Queior violated the conditions of his probation. Id. at 372 n.1. However, none of these issues prohibited the trial court from relying on the probation officer's testimony to

corroborate the hearsay evidence of Queior's illegal drug use and revoke his probation as a result of this violation.

A probation officer "testifying at hearing, subject to cross-examination, to what [he or] she personally did and observed. . . . is classic non-hearsay testimony." Bell, 179 So. 3d at 356; see also Turner v. State, 179 So. 3d 526, 528-29 (Fla. 4th DCA 2015) (concluding probation officer's testimony about a field drug test he personally conducted and the test results he personally observed "was based on his own personal observations and knowledge and, therefore, the testimony was not hearsay"); Isaac v. State, 971 So. 2d 908, 909 (Fla. 3d DCA 2007) (concluding trial court's finding of a probation violation "was not based exclusively on [a] hearsay" lab report where probation officer also testified to other probation violations and that she "personally conducted a field test (positive for cocaine and marijuana) before the urine sample was sent out for laboratory analysis"); cf. Russell v. State, 982 So. 2d 642, 646 (Fla. 2008) (classifying "testimony of direct observation of victim injury and attendant circumstances" as "non-hearsay"); Linic v. State, 80 So. 3d 382, 391 (Fla. 4th DCA 2012) (concluding witness's testimony "was not hearsay because it was based on her personal observations and not on what anyone told her"); see also generally Charles W. Ehrhardt, Florida Evidence, § 801.2 (2015 ed.) (explaining that "hearsay," as defined in section 90.801(1)(c), Florida Statutes, is an out-of-court

statement offered to prove the truth of the matter asserted and noting that a witness's testimony that the witness "saw X buying milk in a supermarket on January 11 . . . is not hearsay").

In addition to not being hearsay, the probation officer's testimony concerning the results of the field drug test that the officer personally administered is otherwise competent evidence, "relevant and material" to the allegation that Queior violated his probation by using illegal drugs. Gainesville Bonded Warehouse, Inc. v. Carter, 123 So. 2d 336, 338 (Fla. 1960) (defining "competent" evidence as evidence that "is relevant and material to the issue or issues presented for determination"). While relevant and material evidence is generally subject to exclusionary rules besides hearsay, see Brumley v. State, 500 So. 2d 233, 234 (Fla. 4th DCA 1986) (defining "competent evidence" as "relevant evidence that does not fit within any rule of exclusion") (emphasis added), this Court's long-standing precedent is that evidentiary rules are relaxed in VOP proceedings. This Court has never held, for example, that the Florida Evidence Code's rules regarding expert testimony apply in a VOP proceeding or that a probation officer must have scientific expertise to testify to the results of a field test personally conducted by the officer. To the contrary, this Court has explained that "strict rules of evidence can be deviated from" and that "a lesser burden of proof [applies] because only the conscience of the court must be satisfied." Cuciak v. State, 410 So. 2d 916, 918

- 9 -

(Fla. 1982); see also Charles W. Ehrhardt, Florida Evidence, § 103.1 (2015 ed.) ("Judicial decisions [have] spoken to different proceedings in which the strict rules of evidence, and therefore the Code, are inapplicable. Among these proceedings are . . . revocation of probation [proceedings].") (footnotes omitted).

Accordingly, like the Fifth District in Bell, we find no justification for holding "that direct testimony from a probation officer who conducted the positive on-site drug test, confirmed by a report from an independent laboratory, is insufficient to meet the relaxed burden of proving a probation violation." Bell, 179 So. 3d at 355. Rather, given the established reliability of field drug tests and their commonplace use in VOP proceedings, which are subject to relaxed evidentiary standards and a lesser burden of proof than a criminal trial, requiring the State to trot out an expert in a case like Queior's where the field test has been confirmed by a lab test is unnecessary to satisfy the conscience of the court that a probation violation has, in fact, occurred. Cf. United States v. Bell, 785 F.2d 640, 643 (8th Cir. 1986) (explaining that "urinalysis laboratory reports bear substantial indicia of reliability" as "the regular reports of a company whose business it is to conduct such tests, and which expects its clients to act on the basis of its reports").[4]

_____

4. The Eighth Circuit in Bell analyzed the reliability of the urinalysis in the context of determining whether the government had shown "good cause" for "dispensing with confrontation" and presenting records rather than live testimony. 785 F.2d at 642-43. Under Florida law, relying on testimonial hearsay to prove a probation violation does not raise confrontation concerns, as this Court has

Queior argues that simply because the results of such tests, which may not always be accurate, have long been used to violate probation is not a valid basis for allowing that practice to continue. However, we reject this argument because a general rule permitting trial courts to rely on field drug tests to corroborate hearsay lab reports does not deny a probationer like Queior the "opportunity to be heard and to show, if he can, that he did not violate the conditions" of his probation. Peters v. State, 984 So. 2d 1227, 1234 (Fla. 2008) (quotation omitted). To the contrary, like the probationer in United States v. McCormick, 54 F.3d 214, 222-23 (5th Cir. 1995) (footnotes omitted), "[i]nnumerable avenues were available to [Queior] to refute the [State's] proof; he merely failed to pursue them. For example, had [Queior] wanted to question the technicians who performed the analys[i]s, [which the field drug test corroborated,] he could have sought a subpoena ordering their appearance. But this he did not do. [Queior also] could have sought to obtain evidence impugning the reliability of the laboratory or its testing methods. But this he did not do." See also Bell, 785 F.2d at 643 ("[N]o evidence was presented to contradict Bell's drug usage, and . . . Bell has made only

previously held that "the rule set forth in Crawford [v. Washington, 541 U.S. 36 (2004)], which provides that testimonial hearsay is inadmissible in a criminal prosecution unless the declarant is unavailable and the accused has had an opportunity to cross-examine the witness, does not apply to probation or community control revocation proceedings in Florida." Peters v. State, 984 So. 2d 1227, 1227 (Fla. 2008).

general, unsubstantiated claims that the laboratory tests may have been defective.").

Finally, the Second District appears to suggest that Queior's probation officer, who had been a probation officer for over 24 years and testified that he administered "an average of forty to fifty of the [field drug] tests per month," may have lacked the training and certifications necessary to qualify as an expert. Queior, 157 So. 3d at 371. However, under the relaxed evidentiary rules applicable to a VOP proceeding, a probation officer is not required to be qualified as an expert in order to testify about the results of the field drug test that the officer personally administered. Cf. Bell, 179 So. 3d at 356 ("view[ing] the probation officer's testimony as similar to a lay witness, testifying in court, who states that he saw the traffic signal immediately before an intersection crash and that the light was green when the plaintiff entered the intersection").

Rather, in a VOP proceeding, the officer's training and experience in administering field drug tests goes to the weight to be given to the officer's testimony, which is an issue for the trial court. See Moore v. State, 788 So. 2d 385, 386 (Fla. 5th DCA 2001) ("The weight to be given the evidence falls within the province of the trial court and this court will not re-weigh the evidence."); see also Turner, 179 So. 3d at 527 (affirming trial court order revoking probation where probation officer, who had an "extensive background and training in

administering in-office drug tests," testified that the probationer failed a field drug test, and "a laboratory report confirm[ed] the results of the in-office test").

Accordingly, in Queior's case, "[b]ecause the hearsay evidence regarding the independent confirmatory [lab] test was corroborated by the probation officer's non-hearsay testimony regarding his field test results, we find no abuse of discretion in the trial court's finding that [Queior] violated his probation as alleged." Bell, 179 So. 3d at 358.

## CONCLUSION

For the foregoing reasons, we hold that testimony by Queior's probation officer that Queior failed a field drug test the officer personally administered is competent, nonhearsay evidence. Accordingly, the trial court did not abuse its discretion by relying upon this testimony to corroborate the hearsay evidence presented, including a confirmatory lab report, to find the probation violation necessary to revoke Queior's probation. Therefore, we quash the Second District's decision to the contrary in Queior.

We also disapprove the First District's decisions in Dawson, Rothe, and Bray to the extent those decisions hold probation officer testimony about the results of a field drug test personally administered by the officer is hearsay, and we further disapprove the First District's decision in Carter and the Third District's decision in Weaver to the extent those decisions require the probation officer to

- 13 -

demonstrate scientific expertise concerning the workings of the field drug test or its reliability in order for the officer's testimony regarding personal observations in administering the test to be considered competent evidence.

It is so ordered.

LABARGA, C.J., and PARIENTE, LEWIS, QUINCE, CANADY, and PERRY, JJ., concur.

NOT FINAL UNTIL TIME EXPIRES TO FILE REHEARING MOTION, AND IF FILED, DETERMINED.

Application for Review of the Decision of the District Court of Appeal - Certified Direct Conflict of Decisions

Second District - Case No. 2D13-3261

(Charlotte County)

Pamela Jo Bondi, Attorney General, Tallahassee, Florida; John M. Klawikofsky, Bureau Chief, and Brandon Robert Christian, Assistant Attorney General, Tampa, Florida,

for Petitioner

Howard L. Dimmig, II, Public Defender, and Richard John Sanders, Assistant Public Defender, Tenth Judicial Circuit, Bartow, Florida,

for Respondent