# United States Court of Appeals

### For the Eighth Circuit

_____

No. 15-2750

_____

United States of America

*Plaintiff - Appellee*

v.

Anthony P. Salsberry

*Defendant - Appellant*

_____

Appeal from United States District Court
for the Eastern District of Arkansas - Little Rock

_____

Submitted: April 11, 2016
Filed: June 10, 2016

_____

Before GRUENDER and KELLY, Circuit Judges, and ERICKSEN,[1] District
Judge.

_____

ERICKSEN, District Judge.

_____

[1] The Honorable Joan N. Ericksen, United States District Judge for the District
of Minnesota, sitting by designation.

Anthony P. Salsberry appeals from the revocation of his supervised release following a hearing on violations of its conditions. He argues that the district court[2] abused its discretion in relying on the results of a preliminary, field drug test to find that he committed a Grade B violation. We affirm.

A district court may revoke a defendant's term of supervised release and impose a sentence of imprisonment if the court finds by a preponderance of the evidence that the defendant violated a condition of his supervised release. *United States v. Miller*, 557 F.3d 910, 913-14 (8th Cir. 2009) (citing 18 U.S.C. § 3583(e)(3)). We review a district court's decision to revoke supervised release for an abuse of discretion. *Id.* at 914. We review for clear error the court's underlying factual findings as to whether a violation occurred. *Id.*

In July 2015, Salsberry's probation officer filed a supplemental petition to revoke supervised release on the grounds that Salsberry had violated multiple special and general conditions of supervised release. One of the asserted grounds was that on July 12, 2015, Salsberry tested positive for methamphetamine. At a hearing, the district court considered the testimony of the probation officer; the county sheriff's deputy who arrested Salsberry on July 12, 2015; jailer Morgan Varner, who administered Salsberry's drug test on July 12, 2015; and Salsberry. Varner testified that he administered the test of Salsberry's urine, which tested positive for methamphetamine, and he authenticated Government's Exhibit A, a photograph that he took of the device he used to test Salsberry showing the positive result. He also testified that both before and after administering the test, when he asked Salsberry about his drug use, Salsberry did not outright deny using drugs, but answered evasively.

---

[2] The Honorable Brian S. Miller, United States District Judge for the Eastern District of Arkansas.

At the district court hearing, Salsberry objected to the admission of Government's Exhibit A solely on chain-of-custody grounds. He also elicited cross-examination testimony intended to undercut "the level of reliability of the field test," including the fact that no confirmatory testing was performed in Salsberry's case.

After hearing the testimony and receiving evidence, including Government's Exhibit A, the district court found that Salsberry tested positive for methamphetamine, a Grade B violation of the condition that he not possess any controlled substances. The court stated that it understood Salsberry's argument and that "he can take that up on appeal," but that Varner's testimony "wasn't just that [the field test] came back positive," but was also that Salsberry responded evasively to questions about his drug use. The court acknowledged Salsberry's argument that "the test was one of those preliminary type of tests" that had not been confirmed, and placed importance on the testimony about Salsberry's evasive responses to support its finding.

On appeal, Salsberry challenges the factual basis for the district court's finding, contending that the proof of chain of custody for the failed drug test was inadequate and that the test was "too unreliable" to be "sufficient to revoke." Put another way, he reasserts his sole objection to the admissibility of the field test and also asserts that even if properly admitted, the field test alone is insufficient to meet the preponderance-of-the-evidence standard.

Salsberry's arguments, however, ignore that the district court did not rely solely on the drug test result. Instead, the court relied on its assessment of the credibility of the witnesses, explicitly crediting the testimony of Varner and the other two government witnesses and discounting Salsberry's testimony as unbelievable. "[A] district court's assessment of a witness's credibility is almost never clear error given

that court's comparative advantage at evaluating credibility." *United States v. Sandoval-Sianuqui*, 632 F.3d 438, 443 (8th Cir. 2011) (quoting *United States v. Wahlstrom*, 588 F.3d 538, 542 (8th Cir. 2009)). In evaluating the testimony, the court placed particular weight on Salsberry's evasive answers to Varner's questions about his drug use. Varner testified that both before he administered Salsberry's field test and after he informed Salsberry of the test's positive result, Varner asked Salsberry about his drug use, and both times, Salsberry replied evasively. The test result thus provides context for Salsberry's on-the-spot statements to Varner on July 12. The court recognized that the field drug test was a preliminary analysis, but found that the testimony about Salsberry's evasive answers weighed in favor of finding the Grade B violation. Furthermore, the court acknowledged Salsberry's cross-examination of the government witnesses – which included questioning about the chain of custody and reliability of the test used on Salsberry, and cross-examination going to whether the sheriff's office was motivated by self-interest – but nonetheless admitted Government's Exhibit A and found that the evidence, considered altogether, proved the violation. The district court based this conclusion on its evaluation of the testimony about Salsberry's evasive responses in the context of the July 12 test result, combined with all the other evidence at the hearing, including its assessment of Salsberry's in-court testimony. Based on this record, we cannot say that the district court's factual findings were clear error.

The materials that Salsberry relies on to argue that the field drug test result alone is insufficiently probative do not compel a different conclusion. As an initial point, Salsberry did not object to the admissibility of the test results on reliability grounds.[3] Moreover, as explained, the district court did not rely solely on the test result. Rather, the court considered the test result as some evidence along with the

---

[3] We also note that the case upon which Salsberry places the greatest emphasis, *Carter v. State*, 82 So. 3d 993 (Fla. Dist. Ct. App. 2011), was recently disapproved in *State v. Queior*, No. SC15-367, 2016 WL 1592740, at \*5 (Fla. Apr. 21, 2016).

testimonial evidence. *Cf. Harrison v. Dahm*, 911 F.2d 37, 41 (8th Cir. 1990) (finding, in a different context, that the results of a urinalysis field drug test can, even without a confirmatory second test, "provide *some* evidence of drug use") (emphasis added). In addition, even if we were to consider the "drug screen package insert" that Salsberry quotes for the proposition that the test used on him "does not detect the actual concentration of the drug," we still could not find any clear error in the district court's findings. The district court did not, nor did it need to, find any particular drug concentration level. In summary, it was not clear error for the district court to find that Salsberry's field drug test result, taken together with the testimony at the hearing, proved a Grade B violation by a preponderance of the evidence.

The district court also did not abuse its discretion in revoking Salsberry's supervised release and sentencing him in accordance with its finding that he had violated the condition not to possess controlled substances. *See United States v. Carothers*, 337 F.3d 1017, 1019 (8th Cir. 2003). Salsberry does not challenge the district court sentence except to the extent that it is based on the finding of a Grade B violation. Accordingly, we affirm the judgment of the district court.

_____