# United States Court of Appeals
### For the Eighth Circuit

_____

No. 17-1880

_____

United States of America

*Plaintiff - Appellee*

v.

Laron Isadel Hill

*Defendant - Appellant*

_____

Appeal from United States District Court
for the District of Minnesota - St. Paul

_____

Submitted: April 9, 2018
Filed: August 9, 2018
[Unpublished]

_____

Before SMITH, Chief Judge, WOLLMAN and LOKEN, Circuit Judges.

_____

PER CURIAM.

Laron Isadel Hill was serving a term of supervised release when he was found to be in possession of a controlled substance and a firearm. The district court[1]

---

[1]The Honorable David S. Doty, United States District Judge for the District of Minnesota.

revoked his term of supervised release and sentenced him to 30 months' imprisonment for violating the conditions of his release. Hill appeals, arguing that the district court erroneously admitted laboratory reports into evidence without requiring the laboratory technicians who had performed the testing to be available for cross-examination. We affirm.

## I. Background

In 2004, Hill pleaded guilty to conspiracy to distribute and possession with intent to distribute 500 grams or more of cocaine in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(B), and 846. He was sentenced to 100 months' imprisonment to be followed by a five-year term of supervised release, which began to run in May 2011.

The probation office's January 2016 petition to revoke Hill's term of supervised release alleged eight violations: (1) failure to abstain from illegal activity; (2) failure to abstain from possession of a firearm; (3) failure to abstain from frequenting places where drugs are sold, used, distributed, or administered; (4) failure to abstain from excessive use of alcohol or drug possession; (5) failure to abstain from associating with felons; (6) failure to answer truthfully to a probation officer; (7) failure to notify the probation office of a change in residence; and (8) failure to abstain from excessive alcohol and from purchasing, possessing, using, distributing or administering any controlled substance.

The government called three witnesses at the revocation hearing: Minneapolis Police Officers Danielle Evans and Jeffrey Werner, and Probation Officer Elbert Shepherd. Officer Evans testified that she participated in the execution of the search warrant at Hill's apartment. The officers handcuffed Hill as they entered the apartment, and Evans then patted him down, finding $4,500 in cash in his pocket. She thereafter found keys to a storage locker in a common area of Hill's apartment,

as well as a document indicating the storage locker belonging to Hill. Evans went to the storage locker, which was located in the laundry room on the same level as the apartment, and found an EAA .357 caliber revolver, .357 caliber ammunition, a Taurus .45 caliber pistol, and suspected heroin inside a drawstring camouflage bag that matched the pattern of Hill's bed sheets. Evans turned the firearms and heroin over to Officer Werner.

Officer Werner, the lead investigator in the case, testified that he collected all of the evidence seized during the search. He brought the seized substance back to the police station, where it field-tested positive for heroin. Werner also collected a DNA sample from Hill, and Minneapolis Police crime technicians swabbed the firearms for DNA. He then delivered the suspected heroin along with the DNA samples to the Bureau of Apprehension Forensic Science Laboratory (Forensic Lab) for further testing. Over Hill's objection, the district court admitted the forensic laboratory report that confirmed that the seized substance was 24.853 grams of heroin. It also admitted the laboratory report that determined that the DNA collected from the Taurus .45 caliber pistol was a mixture of four individuals and that Hill could not be excluded as a contributor, unlike 99.91 percent of the general population.

Probation Officer Shepherd then testified that a condition of Hill's supervised release required him to submit to periodic drug testing, which included wearing sweat patches that can detect controlled substances or related metabolites in a person's sweat. Shepherd also discussed the application, wearing, removal, delivery, labeling, and results of the sweat patches. Over Hill's objection, the district court admitted five sweat patch laboratory reports, which indicated that Hill had used either cocaine, heroine, or both, while wearing the patches.

In admitting the laboratory reports over Hill's objections, the district court acknowledged that the rules of evidence do not apply to revocation hearings, but also determined that the evidence was reliable. The district court then found that Hill had

-3-

violated the conditions of his supervised release, that his conduct resulted in a Grade A violation, and that he had a criminal history category of IV.[2]  The United States Sentencing Guidelines (U.S.S.G. or Guidelines) recommended a sentence between 24 and 30 months' imprisonment.  The district court imposed a 30-month sentence.

## II.  Discussion

Hill argues that the district court erred in admitting the laboratory reports into evidence in the absence of Hill's opportunity to cross-examine the experts who had prepared them.  We review a district court's evidentiary decisions, as well as its decision to revoke supervised release, for abuse of discretion.  United States v. Ray, 530 F.3d 666, 667 (8th Cir. 2008).  We review *de novo* questions arising under the Constitution.  Id.

The government concedes that it offered the district court no explanation for not calling the technicians who had prepared the reports or the chemist who had tested the substance.  The Sixth Amendment's Confrontation Clause guarantees a defendant's right to confront adverse witnesses in criminal prosecutions.  U.S. Const. amend. VI; see Crawford v. Washington, 541 U.S. 36, 42 (2004).  In Melendez-Diaz v. Massachusetts, 557 U.S. 305, 310-11 (2009), the Supreme Court held that a defendant in a drug distribution case had the right to confront the analysts who tested the seized substance because their certificates of the test results were testimonial and the analysts were witnesses for the purposes of the Sixth Amendment.  The Supreme Court extended this holding in Bullcoming v. New Mexico, 564 U.S. 647, 663 (2011), concluding that a defendant charged with driving while intoxicated had the right to confront the analyst who had personally conducted the analysis of the defendant's blood, and that the substitution of a person knowledgeable about the

---

[2]Hill challenges the sentence only to the extent that it is based on the Grade A violation.  He does not challenge his Grade C violations.

testing procedures would not satisfy the Sixth Amendment confrontation requirement. Although Hill asks us to extend the Melendez-Diaz and Bullcoming holdings to supervised release revocation hearings, we conclude that our holding that any error in admitting the reports was harmless pretermits our consideration of that request. We reach the same conclusion with respect to Hill's argument that the Due Process Clause and the Federal Rules of Criminal Procedure confer upon him the right to cross-examine the laboratory technicians.

We conclude that any error in admitting the laboratory reports in the absence of an explanation by the government of why it did not provide live testimony from the laboratory technicians was harmless. Although the laboratory reports supported the government's case, the remaining evidence was clearly sufficient to prove by a preponderance of the evidence that Hill had violated his supervised release. United States v. Miller, 557 F.3d 910, 913-47 (8th Cir. 2009) (citing 18 U.S.C. § 3583(e)(3)) (standard of review); United States v. Williams, 982 F.2d 1209, 1212 (8th Cir. 1992) ("[T]he identity of a controlled substance can also be proved by circumstantial evidence and opinion testimony."). Testimony showed that Hill had $4,500 in cash on him when he was searched, that police seized the suspected heroin and the firearms from a locker that belonged to Hill, that the substance was concealed in a drawstring bag that matched the pattern of Hill's bed sheets, that the substance was separated into numerous individual plastic bags in a manner consistent with drug distribution, and that the substance field-tested positive for heroin. See United States v. Salsberry, 825 F.3d 499, 501-02 (8th Cir. 2016) (holding that the testimony of a probation officer, arresting officer, jailer, and the defendant, along with a positive field test was sufficient to prove by a preponderance of evidence that the defendant had violated his supervised release). The district court thus did not abuse its discretion in revoking Hill's supervised release and sentencing him in accordance with its finding that he had violated the condition not to possess a controlled substance or firearm.

The judgment is affirmed.

_____